Mr. McCallum, just give her a second to get settled at Council table. Okay, please proceed. Thank you, Your Honors. Travis McCallum for Appellant Scripp-Pro. May it please the Court. I think the place to start on this appeal is obviously with the district court's order in this case. And the district court immediately below held that the critical missing element, those are the court's words, in the claims at issue is a limitation specifying that the control system directs storage of the containers based on patient name. Now, there's really no dispute on this appeal that that patient name requirement is erroneous. Innovation does not try to justify that patient name requirement. Instead, they call it immaterial semantics. They don't do that to get behind the ruling. They do that in order to shift the argument and make yet another new argument about what this issue is really about. Now, the specification doesn't support that patient name requirement either. In fact, it specifically identifies another piece of identifying. Let's just assume that patient identifying information is what we're all talking about. Don't waste your time on this distinction between name and identifying information. Absolutely. Move on. If the contention is that the specification requires patient-specific collation, then there's three big problems with that argument as well. The first, again, is the specification itself, which is not merely silent on this issue. It's actually affirmatively open-ended. It says that the invention collates containers based on an organization scheme that accounts for identifying information of the container, such as a patient name or a prescription number. Now, it doesn't say patient-specific identifying information. It just says identifying information. I mean, it does seem, though, that the specification is largely directed at patient-specific collation. I mean, that's what it talks about when it talks about the problems and the improvements and all of the difficulties that are associated with sorting things by patient and not having to look at the specific prescription number and look it up and then re-identify it. I mean, it does seem like that's, at the very least, the main purpose of the invention. Certainly, the preferred embodiments discuss patient-specific collation. But as the Court knows, the patent isn't necessarily limited to the specific embodiments identified in the specification. And certainly, given this very specific language about identifying information that appears multiple times in the specification, we believe that opens up that identifying information to other pieces, patient-specific or not patient-specific. And back to the purposes of the invention as well, certainly a couple of those purposes relate to something that you could call patient-specific collation. But there's also non-patient-specific collation purposes set out in the specification. There's actually a non-collation purpose set out in the specification. So those purposes by themselves, we don't believe, limit the invention to something that must perform patient-specific collation. You also have the original claims in this case. The original claims, like the claims that are now before this Court, didn't include patient-specific limitations. They claimed a collating unit, just like the claims that are now before the Court. And those claims are part of the specification. So we believe it's pretty clear that those claims are good evidence that the inventors recognized and possessed at the time an invention that required collation. It required some sort of identifying information, some sort of organizational scheme, but it didn't necessarily require patient-specific collation. The third big reason why the argument that innovation puts forward about patient-specific collation is erroneous is that at the end of the day, it's fundamentally inconsistent. Innovation would have the Court believe that a person of ordinary skill reads this specification and can conclude only that it describes a patient-specific collating unit. Everything in that specification, according to innovation, describes a patient-specific collating unit. And yet when we turn to the claims, that same person of ordinary skill somehow forgets everything that he or she read in that specification, and instead, according to innovation, the person skilled in the art would not understand collate to mean arranging for a particular customer using patient-identifying information. Those are two inconsistent positions, and what innovation is really doing is divorcing the claims from the specification. And certainly our position, ScriptPro's position, is that the specification does not limit the invention to patient-specific collating unit. Therefore, when the term a collating unit appears in the claims, it's not a patient-specific collating unit, it's just a collating unit. But either way, whether it's limited by the specification or not, there's really no path to victory for innovation, because their path requires the Court to divorce those claims from the specification. So for all those reasons, we believe both the district court's order and innovation's different argument on appeal cannot stand, and certainly at bare minimum there are factual issues here, given the language of the specification, including the purposes and the specific language about identifying the information, given the original claims of the patent, given the inconsistency of their position. At bare minimum, there are factual issues here that remain to be resolved at trial. This is not a case that can support summary invalidation of the patent. Those are the merits. I also do briefly want to touch on some of the procedural-based arguments that innovation makes. And I think it's telling, in fact, how many waiver-based arguments appear in their brief, and I think that's indicative of the hair-trigger nature of some of these waiver-based arguments. The first set of arguments has to deal with the arguments that Scripp-Pro made in the prior appeal in this case. And innovation now claims that basically what Scripp-Pro said during the prior appeal somehow effectively limits the scope of the invention that's now before the Court. There's two main points that we'd make as far as those arguments go. The first is that Scripp-Pro simply didn't argue on the last appeal that this invention must be limited to patient-specific collation. It certainly used examples of patient-specific collation to make its point on the prior appeal, but it was entitled to do so because those examples are in the specification and the claims cover those examples, but that doesn't mean that the invention is limited to patient-specific collation.  It doesn't mean that this invention is limited to patient-specific collation to prevail on the last appeal. Rather, the main point that Scripp-Pro made on that last appeal was that this invention utilizes identifying information. It doesn't matter whether it's patient-specific identifying information or some other type of identifying information. The fact that there's identifying information was enough to rebut the argument that innovation had made that the sensors were essential to the invention on the last appeal. The last set of what I'm calling the waiver-based arguments that innovation makes has to do with the summary judgment arguments immediately below and then the arguments here on appeal, and the one point that I just want to make on those arguments is that innovation has shifted its position and, in fact, continues to shift its position as evidenced by the move from patient name to patient identifying. In their motion below, their initial motion before the district court, innovation put forward what we've called in our briefs a structural component argument. They argued that the claims are invalid because they lack any component for keeping track of what slots are open and what slots are being used for a particular patient. Innovation responded to that argument, and on reply— I'm sorry, Scripp-Pro responded to that argument, and in reply, innovation changed and said that that component is now irrelevant and that the claims instead were invalid because they do not require storage according to the central purpose of the invention. So it shifted from a component argument to a statement of the actual purpose of the invention, and those are two different arguments. We know they're different, in fact, because innovation now presents them to this board in its appeal brief as two separate arguments. Do you like this? Oh, I'm sorry. The only argument that was before Scripp-Pro when it responded to innovation summary judgment motion was the component argument. That's the argument it responded to. There can't be any waiver on this issue. Would you like to save your remaining time for rebuttal? I would, unless there's any further questions. No? That's good. Mr. Mitchell—I mean, Ms. Mitchell. May I please click? We're here today because Scripp-Pro's claims are broader than the broadest form of the invention described in the specification, and that is patient-specific collation. The claims themselves— Oh, go ahead. I'm sorry. Do you think prescription number is patient-specific collation? Prescription number is patient-specific collation. It does lead to patient-specific collation according to the specification, focusing on column 11, lines 45 through 48 through 50. When a Scripp number is assigned— or when a Scripp is assigned a Scripp number, the Scripp number identifies the particular patient name and medicament to be dispensed. And so even according to the preferred embodiment that does allow for input by a prescription number, it's still tied and correlated to a patient name, which you then subsequently see in figure 8 in the accompanying text in terms of how it goes about collation as well. What about the language at column 8? Why don't we start at line 19? This is under the preferred embodiment. Thus—do you have it handy? Yes. Thus, the coallating unit 10 of the present invention provides an automatic container storage unit that may be used with existing control centers. The coallating unit 10 automatically stores containers exiting the ADS by patient, not patient name, but by patient, prescription, or other predetermined storage scheme without input or handling by the operator. Why doesn't that clearly contemplate that even the preferred embodiment allows for coallation by any predetermined storage scheme? If it does allow for— first of all, the purposes of the invention are patient-specific. The— Not all of them. No, but certainly the background of the invention discusses that as the problem to be solved. Not the problem. One of the problems to be solved, right? Because there is also multiple containers per slot and having it work with existing ADSs. So, for example, even the multiple containers per slot, that's tied to patient because the specification tells us that one of the problems is patients often have multiple prescriptions. And so that was the whole point of having slots that could hold multiple— Why? Why can't you sort by medicament and then you'd have multiple prescriptions in a single slot? It would just be by active ingredient of the medicine. You could. I suppose the question is, why would a person of ordinary skill reading the specification understood the inventors to have been in possession of that type of storage scheme? And here we have, in column four, right under the summary of the invention, you have the present invention language. The present invention solved the above described problems by providing a coallating unit. And on lines 22, the unit stores prescription containers according to a storage algorithm that is dependent on a patient name for who the container is intended and an availability of an open storage position in the coallating unit. Yes, but if I were to read that as limited, then I would limit— If I actually thought that stood for the proposition that you're advocating, then I'd have to say this is limited to patient name and can't even include patient identifying information and can't include a prescription number. And that's not even really what you're arguing on appeal. So this present invention language clearly is not a clear and unmistakable disclaimer of everything other than patient name because you're not even making that argument on appeal. So let's assume that, turning back to the language, I guess, on column eight, the coallating unit automatically stores containers exiting the ADS by patient prescription or other predetermined storage scheme without input or handling by the operator. There is, however, no disclosure anywhere in the specification for how to accomplish that other type of storage scheme. And the claims don't even require any particular type of storage scheme, even if we're not talking about— which I think, reading the specifications as a whole, it does disclose patient— some type of patient-specific coallation. Well, it certainly discloses patient-specific coallation, but there's nothing in here that suggests don't do it any other way. Is there? And isn't that what you need? We would certainly— you're asking us to make an inference that because it only— and I don't think it only does, but even assuming it only talked about patient-specific coallation, that it affirmatively disclaims everything else. But it doesn't— it talks about overcoming problems in the prior arc, but it talks about it in terms of improving them. It doesn't say that you can't do it that way. It's just an improvement. So I don't understand how that's specifically saying we're not doing it this way or we can't do it this way. I mean, this unit, if whoever buys it decides they don't want to collate by patient name and wants to collate based upon some other predetermined storage scheme, they can do it, can't they? And that's what it describes. So, I feel like I'm missing something. I don't really know where to go with that because I feel like we're on different pages in terms of the overall disclosure of the specification. Well, I think it's a pretty simple question. I mean, I agree with you that at least one, it's seemingly a major point of this invention is to collate by either patient name or patient identification number. It talks about that for the large part of the specification throughout. But we've never said that's enough to disclaim other more broad claims as long as they're supported. And maybe this is minimal support when it talks about other predetermined storage, but it's in there and there's nothing else that says you can only do it one way. So I don't understand. I mean, it seems implicit in your argument is adopting a DB disclaimer, which of course we can't do as a panel. Correct. I mean, our argument is that the specification unambiguously limits the nature of the invention to a patient-specific collating unit. I understand from y'all that you don't agree with that because of the language in column A. Well, and also because there's no language that says only do it this way. It just talks about do it this way. And there seems to be a difference between those things. So the patent itself does, in the sense of it disparages the priority in that sense. It's like Lizertech and Tronzo in that the background of the invention talks about the problems of inconveniencing pharmacists who have to fumble around and look for all these different prescriptions in different locations and slots and holding areas. Is that the section that's actually tied to saying why it'd be better to do it by name than prescription number? Are you talking about column 3 where they talk about how it's time-consuming and prone to errors since the operator much matched prescription numbers that are often several digits in length? Is that the background of the invention? The background of the invention throughout talks about, so for example, there's some language in column 1. It talks about pharmacists not having enough time to keep up with the containers as they're exiting the automatic dispensing system and if the patient has several containers the operator has to sort through even more containers to try to find them all. And then there's some more language beginning at the bottom of page 2. Well, doesn't that just go to the automated nature of the system that's being claimed as opposed to patient name in particular? I mean, like for example, the part you're talking about is when an operator wishes to receive a particular patient's container, the operator must look at it read the label of each one on the outfeed and then put it in the correct container. I mean, that's what's in column 1 and what that's really doing is saying, boy, wouldn't it be great to have an automated way of doing this? Some sort of machine that could read something on the label and thereby allocate it to a bin rather than having the pharmacist have to do it manually. I mean, certainly some type of organizational scheme that makes life easier for the pharmacist that's less efficient, or that's more efficient and less prone to error than prior ways, which was simply to output the prescriptions by prescription number and then they have to go and check and see is that the right prescription number for whatever it is that I'm trying to accomplish. And so certainly that's the purpose of the invention. And anything beyond that stated purpose is disparaged. And so it would be our position that that brings this case in line with the likes of Tronzo and Lizard Tech where the patents disparage and the prior does not accomplish any objectives except for the overall purpose essentially of what the invention was and they're missing a claim limitation. Do you have anything further? No, I don't think I have anything. Okay, that's fine. Ms. Mitchell, thank you. Mr. McAllen. Do you feel like there's something you need to address? Just a couple of quick points, Your Honor. Your Honor's noted that innovation's position would represent some sort of change in the way that this court views disclosure and that in fact is true and if you look at innovation's red brief at page 35, they argue that Skripro didn't point to any portion of the specification that disavows the patient-specific organizational scheme that is missing from the claims. That of course is not the standard and is not the point of the argument we're making. As far as the case law that Ms. Mitchell brought up, all of innovation's cases involved specifications that described one and only one way to do something and that is simply not the case with this specification. I know it's not in front of us and it's virtually irrelevant to what we're deciding, but I'm just curious what, this is an infringement suit, what does the accused device sort by? How do they coallate? That's, my understanding Your best guess. Yeah, best guess is by patient of some kind. But that's not a I don't that's not a question I'm fully prepared to answer right here before you today. But in any event, I think I'll pull out now and again, we think that reversal is warranted in this case. Thank you, Your Honor. I thank both counsel. The case is taken under submission. All rise. ... ... Your Honor, the court is adjourned. The case is taken.